[Ebersole v. Southern Building and Loan Association.]


# Ebersole *v.* Southern Building and Loan Association.

*Bill to Enjoin Foreclosure; for Cancellation of Mortgage, and For an Accounting.*

(Decided April 28, 1906.   41 So. Rep. 151.)

1. *Principal and Agent; Powers of Agent; Burden of Proof.*— Where a stockholder, in a building and loan association, claims that the soliciting agent of the association had guaranteed the maturity of his stock in 72 months, the burden was on the complainant to show the agency of the one making the guarantee, and that it was within the scope of his authority.

2. *Building and Loan Associations; Maturity of Shares.*—The estimate made by a building and loan association as to when the stock will mature is not a guarantee, but the expression of an opinion.

3. *Depositions.*—A commissioner is not required to take down the answer of witness in his own handwriting. It is enough if he comply with Section 1841, Code 1896, and have it done by an impartial person or by the witness himself.

APPEAL from Jefferson Chancery Court.
Heard before HON. J. C. CARMICHAEL.
Bill by C. D. Ebersole v. So. B. & L. Asso., the purposes of which and the facts concerning which are sufficiently stated in the opinion of the court. The chancellor rendered a decree dismissing the bill from which this appeal is taken.

A. LATADY, for appellant.—No man can be held to have waived his rights unless such waiver is distinctly made with full knowledge of the rights he intends to waive; and the fact that he knows his rights and intends to waive them must clearly appear.—*Wilson v. Carpenter*, 91 Va. 192; *Montague v .Massey*, 76 Va. 314; *Hotchkiss v. Middlekauf*, 96 Va. 649. The appellant received, exclusive of interest, from appellee the sum of $1,384.00, and appellee has received from appellant the sum of $1,626.32. And the parties stand in the same relative

[Ebersole v. Southern Building and Loan Association.]

positions and in equity and good conscience the appellee is indebted to appellant for the money which it has received, and used for corporate purposes.—*B. & L. Asso. v. Williamson*, 189 U. S. 122; *Allen v. LaFayette*, 89 Ala. 46.

CABANISS & WEAKLEY, for appellee.—Under the statute regulating the B. & L. Asso., all stock must be matured as soon as the payments made thereon, together with the profits earned, amount to the par value of the stock. It could not be sooner matured without doing wrong to the other members of the mutual organization. —*Providence v. Interstate Ass'n*, (Tenn.) 58 S. W. Rep. 265; *Miller v. Eastern, &c. Ass'n*, (Tenn.) 53 S. W. Rep. 231; *O'Malley v. Ass'n*, 36 New York Supp. 1016; *Daily v. Peoples, &c. Ass'n*, (Mass.) 52 N. E. Rep. 1090; *Baltimore, &c. Ass'n v. Powhattan Co.*, (Md.) 39 Atl. 274; *Heslin v. Eastern, &c. Ass'n*, 70 N. Y. Supp. 612; *Cantwell v. Welch*, (Ill.) 58 N. E. Rep. 414; *Peoples, etc., Ass'n v. Morris*, (Ark.) 56 S. W. Rep. 266; *Sumrall v. Commercial, etc., Ass'n*, (Ky.) 44 L. R. A. 659; *Latimer v. Equitable Co.*, 81 Feb. Rep. 776; *Bartche v. Equitable Co.*, (Mo.) 48 S. W. Rep. 954.

The estimate of the time when stock will mature is not a guaranty, biding on the association.—*Johnson v. Southern B. & L. Asso.*, 121 Ala. 278; *Motes v. Peoples etc., Asso.*, 137 Ala. 367. By giving the mortgage with the agreements therein contained the appellant changed the contract and waived the right to have his stock mature at a certain time.—*Pioneer S. & L. Co.*, 127 Ala. 521.

HARALSON, J.—The certificates of stock of the complainant in the defendant Association, recited that the shares of stock were subscribed for, "subject to all the conditions, rules, regulations and by-laws of said Association now in force or which may be hereafter enacted."

In his application for shares of stock, which formed part of his contract with the association, complainant agreed "to abide by all the terms, conditions and by-laws" of the company.

[Ebersole v. Southern Building and Loan Association.]

Section 1, Art. 2 of the by-laws provides, "The certificates, terms and conditions of shares of the association, the by-laws and the application for membership, form the contract," with the company.

The bill as originally filed,—and this is the controlling point in litigation,—alleged that the complainant, in July, 1889, subscribed for and had issued to him twenty (20) shares of the stock of the defendant association of the par value of $1,000.00, and at the time said subscription was made, the association guaranteed to him that the stock would mature after seventy-two (72) monthly payments thereon; that afterwards, on the 5th day of October, complainant subscribed for twenty (20) additional shares, on the faith of a similar guaranty, as to the maturity thereof; that complainant had borrowed of the association various sums of money, aggregating more than fifteen hundred ($1,500.00) dollars, to secure which, all of said shares of said stock had been pledged to the association, and a mortgage had been executed by him, also, on certain real estate, to secure one of the loans of $1,000.00; that complainant had made seventy-two monthly payments on all of said shares, but that the association had failed to mature the same, and was taking steps to foreclose said mortgage. The bill prayed for an injunction against said association; that the mortgage might be canceled, and also asked for an accounting.

The answer denied that said association made any promise or agreement with complainant that said stock would mature in seventy-two months, as alleged in the second and third paragraphs of the bill, and denied specifically, that the association ever, at any time, made any promise or agreement with complainant, that any of the shares of stock would mature at any definite time, or on the payment of any definite number of monthly installments on said stock. On final hearing on pleadings and proof, the chancellor dissolved the injunction theretofore granted, and dismissed the bill.

The complainant testified, that he was solicited to take the stock by one Mr. Hammon, who guaranteed

that the stock would mature in seventy-two months; and W. A. Simmons testified, in substance, to the same thing; but on his cross-examination he testified substantial'y that the literature of the company which Hammon handled, contained the guaranty; but it is not anywhere satisfactorily shown, that Hammon stated to the complainant, that the association would guarantee the stock to mature in the time stated, nor that it was so represented in the association's literature. It does not even clearly appear that Hammon was an agent for the company and there is an entire lack of evidence to show that he had any authority to make a guaranty for the company. From aught appearing, he may have been engaged, merely, in soliciting stock under some agent of the association; and whatever Hammon may have said to, or agreed with complainant in respect to the maturity of the stock, was not binding on the association. It was done so far as appears, without the authority or approval of the association. The burden was on the complainant to show the agency and that the guarantee was within the scope of the agent's authority, neither of which was established. Across one of the applications for stock was printed in red ink, "Agents have no authority to inspect property, or. to promise a loan, at any given time, or make any promise not in conformity with our printed matter."

The witness, S. R. Cruse, examined by defendant, who was the secretary of the association, was asked by complainant on the cross, if it was not a fact that the association undertook that all its shares both to investors and borrowers, alike, should mature on the basis of seventy-two monthly payments, and he replied, ."I do not know of any literature originally issued by the association setting forth such an undertaking on the part of the association. The literature of the association has always been upon the basis of an estimate; that is, an estimate simply of the amounts that would probably be realized in about six years. * * * The original by-laws do not provide for maturity after making seventy-two payments. Section 18 of the by-laws fully sets forth

[Ebersole v. Southern Building and Loan Association.]

about the maturity of the shares, but no mention is made as to the number of payments being 72." Attached to the deposition appears what purports to be a bulletin, as a part of the literature of the association setting forth its objects, plans, etc., in which appears, as a part of its plan, the following: "The Southern Building & Loan Association issues shares (limited by the laws of the State of Alabama) of $50.00 each. Any person may become a shareholder and apply for a number of shares. Whenever the amount in the loan fund to the credit of the share (from maturity payments and profits) equals $50.00, such shares shall be fully paid in and be considered to have fully matured, and no more monthly payments shall be required. All shares are estimated to mature in about six years from their date, and the member may withdraw such shares and receive $50.00 therefor." In all that appears in evidence, it would seem to be fully established, with nothing to the contrary,—except the vague and uncertain evidence of complainant and Simmons as to what Hammon stated to them, and their uncertain recollection of what the literature of the company contained,—that no definite time was ever stated to those witness or published to the world in the literature of the association, as to when the shares would certainly mature. It does appear, that it was estimated that the shares would mature in about six years or seventy-two months. But there was no guaranty to this effect. Furthermore, it appears from the evidence, that complainant discontinued the payments of maturity installments on his shares before the amount in the loan fund to the credit of his shares, from maturity payments and forfeits, equaled $50.00 for each share, and that the payments were discontinued prior to the time when maturity could be declared. At the time he ceased to pay on the shares, or discontinued payments of dues, the value of his certificates, number 429, was $658.28, and of the other, number 4,590, was $612.36.

It is true that the association, for several years after it commenced business, estimated that its stock would mature after seventy-two monthly payments. Every as-

sociation doing a similar business, must, necessarily make such an estimate, that its stockholders and borrowers may form some idea when the stock will mature; but such an estimate cannot be held, and was never held, so far as we know, to be a guaranty of the time of the maturity of the stock. Such representations were no more than the expression of opinion on matter equally open to observation and inquiry by both parties, and can not be treated as false representations. We have had occasion heretofore, to treat of this subject very fully, and will not now do so again.—*Beyer v. National Building & Loan Association*, 131 Ala. 376, 31 South. 113; *Motes v. People's Building & Loan Association*, 137 Ala. 374, 34 South. 344; *Johnson v. Southern Building & Loan Association*, 121 Ala. 524, 26 South. 201.

The motion to suppress the deposition of Cruse, on the grounds stated therefor, was properly overruled. There is no rule or statute that requires the commissioner, himself, to take down the answers of a witness in his own handwriting. "It is the duty of the commissioner to reduce the answers of the witness to writing, or cause it to be done by the witness himself, or some impartial person, as near as may be, in the language of the witness," etc. Code 1896, § 1841.

There are other questions raised and discussed, but they are unimportant, as what we have said disposes of the case.

Affirmed.

DOWDELL, ANDERSON, and DENSON, JJ., concur.